## Richmond

MARTIN PETE CARDWELL v. COMMONWEALTH OF VIRGINIA.

June 10, 1968.

Record No. 6776.

Present, All the Justices.

*J. D. Bowie (R. Russell Myers, on brief), for plaintiff in error.*

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General, on brief), for defendant in error.*

I'ANSON, J., delivered the opinion of the court.

On May 2, 1966, Martin Pete Cardwell, herein called defendant, was indicted by a grand jury in the Corporation Court of the City of Bristol on a charge of statutory burglary, and upon suggestion of his court-appointed attorney that defendant's sanity was in question the trial court committed him to Southwestern State Hospital to ascertain his mental condition. The superintendent of the hospital notified the court below, on January 9, 1967, that the defendant was not insane and was competent to stand trial and testify in his own defense, and he was promptly returned to the city jail in Bristol. On February 13, 1967, defendant, represented by court-appointed attorneys, entered a plea of not guilty to the indictment. A jury heard

the evidence, found him guilty as charged, and fixed his punishment at seven years in the State penitentiary. Defendant was sentenced accordingly, and we granted a writ of error to that judgment.

Defendant makes several assignments of error, but the principal and controlling one is that the trial court erred in admitting in evidence his written confession dated February 1, 1966.

The evidence shows that late on the night of January 9, or in the early morning hours of January 10, 1966, the Euclid Avenue Baptist Church in Bristol, Virginia, was broken into and entered, the church offices were ransacked, and postage stamps of the value of $17.00 were taken and carried away.

The pastor of the church testified that the defendant made a profession of faith in the Lord at a revival service conducted during the first week in January, 1966, and that he baptized him on the night of January 9.

Captain Stigall of the Bristol Police Department conducted an investigation of the burglary, and on February 1, 1966, he went to the Hillsville jail in Carroll county, Virginia, to question the defendant, who was confined there on an unrelated charge. Stigall testified that he interrogated defendant in the jail concerning the church burglary and no one else was present during that time. Before interrogating defendant he advised him "that he didn't have to make any statement, that any statement he might make could be used against him at court of law, that he had a right to an attorney, and that if he made any statement, it had to be free and voluntary on his part without any threats, promises or rewards being made to him by me." Defendant did not request the assistance of counsel, and after being questioned about five minutes he readily confessed to breaking and entering the church. Stigall reduced the detailed confession to writing and it was signed by the defendant after he had read it.

At the top of the confession signed by the defendant there was printed the substance of the oral warning given by Captain Stigall, and the following statement: "I hereby expressly waive my right to the advice of counsel, and voluntarily make the following statement * * *."

The confession was admitted in evidence and read to the jury over the objection of defendant's counsel.

Defendant says that the confession was not admissible in evidence because he was not warned before making the statements that he had a right to the presence of an attorney, either retained or appointed, in

compliance with the procedural safeguards delineated in *Miranda* v. *Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694, 10 A.L.R. 3d 974 (1966). He also relies on our recent cases of *Durham* v. *Commonwealth*, 208 Va. 415, 419, 158 S. E. 2d 135, 139 (1967); *Dailey* v. *Commonwealth*, 208 Va. 452, 456, 158 S. E. 2d 731, 734 (1968); and *Johnson* v. *Commonwealth*, 208 Va. 740, 743-5, 160 S. E. 2d 793, 795-6 (1968), which quoted and followed the *Miranda* rule.

In *Miranda, supra,* the Court held that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, certain procedural safeguards are required to protect the constitutional privilege against self-incrimination. In addition to the traditional warning that the person has the right to remain silent and that anything he says can be used against him in a court of law, he must be told prior to any questioning "that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U. S. at 479, 86 S. Ct. at 1630, 16 L. ed. 2d at 726, 10 A.L.R. 3d at 1014. See also, *Mathis* v. *United States*, 391 U. S. 1, 88 S. Ct. 1503, 20 L. ed. 2d 381.

It is perfectly manifest that neither the oral warnings of Captain Stigall nor the printed statements in the written confession advised the defendant before his in-custody interrogation that he had the right to the presence of an attorney and that if he could not afford an attorney one would be appointed for him by the court if he so desired. Thus the constitutional rule delineated in *Miranda* and followed by this court in *Durham, Dailey* and *Johnson, supra,* was not complied with, and defendant's statements did not qualify as a voluntary confession.

The Commonwealth says that the *Miranda* opinion recognized that an accused may waive his right to retained or appointed counsel at an in-custody interrogation, and from that premise it argues that defendant's written confession shows that he expressly waived his right to the advice of counsel and voluntarily made the confession.

The Court said in *Miranda* that after all the required warnings have been given an accused he may knowingly and intelligently waive his rights and agree to answer questions or make a statement. But the Court further said that "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence

obtained as a result of interrogation can be used against him." 384 U. S. at 479, 87 S. Ct. at 1630, 16 L. ed. 2d at 726, 10 A.L.R. 3d at 1014.

Defendant was told by Captain Stigall before the questioning began "that he had the right to an attorney," but he was not told that if he could not afford an attorney one would be appointed for him prior to any questioning if he so desired. The statement in defendant's confession that "I expressly waive my right to the advice of counsel," is not a waiver of his right to have court-appointed counsel. One cannot knowingly and intelligently waive a right which he was not told he had. Moreover, the statement in defendant's written confession expressly waiving his right to the advice of counsel was not made until after he had orally confessed the crime charged.

The answer to the Commonwealth's final argument, that the defendant was of average intelligence and knew that he had the right to court-appointed counsel present before answering any questions, is also found in *Miranda*. There it was said:

"[A]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during the interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that a person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." 384 U. S. at 471, 472, 86 S. Ct. at 1626, 16 L. ed. 2d at 722, 10 A.L.R. 3d at 1009, 1010.

For the reason stated, the defendant's confession was inadmissible in evidence and the case is reversed and remanded for such further proceedings as the Commonwealth may deem advisable.

*Reversed and remanded.*