**Hurstell FANT, Petitioner,**

**v.**

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 69–C–24–D.**

United States District Court
W. D. Virginia,
Danville Division.

Aug. 11, 1969.

W. Luke Witt, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This proceeding comes before the court on a petition for habeas corpus filed *in forma pauperis* by Hurstell Fant a prisoner of the State of Virginia pursuant to the provisions of 28 U.S.C.A. § 2241.

Petitioner Fant is presently serving a five year sentence in the Virginia State Penitentiary pursuant to his conviction on April 10, 1968, in the Circuit Court of Henry County, Virginia, for breaking and entering. The conviction resulted after a trial by judge and jury in which the petitioner, represented by court-appointed counsel, entered a plea of not guilty.

Petitioner appealed his conviction to the Virginia Supreme Court of Appeals which denied his petition for writ of error on March 11, 1969. This petition for a writ of habeas corpus was filed in this court on April 29, 1969, after petitioner exhausted his state remedies in compliance with the provisions of 28 U.S. C.A. § 2254, as interpreted in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963). By order of this court on July 9, 1969, petitioner's transcript was filed on July 14, 1969 in said court. Full and careful consideration has been given to said transcript in the determination of petitioner's claim.

In the present petition before this court, petitioner alleges that his confession was involuntarily obtained while he was under "intoxication", and that its introduction into evidence during the trial denied petitioner his constitutional rights against self-incrimination.

The pertinent facts are as follows. Upon receiving a phone call from the owner of Roberts Body Shop, located off Route 220 near Collinsville, informing the Sheriff's Department that there had been a breaking and entering of said shop, one, Deputy Rogers, with the assistance of others, apprehended the petitioner in the vicinity of the alleged crime. As petitioner was being transported to the police station, Deputy Rogers informed Fant of his constitutional rights, because "he was starting, mumbling something about going in a place". After Fant was completely advised of his rights, "responding that he understood them", he continued to confess the manner of breaking into the repair shop and the reasons for doing so. Shortly thereafter, while at the police station, Deputy Rogers along with Officer Hill, began questioning petitioner regarding the alleged break-in, however, prior to such interrogation, again all constitutional warnings were made to Fant, especially that he could have a lawyer present during the interrogation stage and his right to remain silent. Throughout this entire period the trial record shows that the petitioner was fully knowledgeable of such rights. Both officers testified that he made no request for counsel after having been advised that he could have one during the interrogation period. Petitioner likewise was informed that he could cease answering questions during this period at any time, but the record clearly shows that he continued explaining the break-in, the manner in which it was accomplished, and the reasons for doing so. During the interrogation period, coins were found on the petitioner which he admitted were those taken from the cigarette machine, totaling some nineteen dollars.

Petitioner maintains that because he had been drinking, his oral statements to the police were made while he was unable to have full control of his faculties, thus rendering an involuntary confession. Upon being booked by the officers it was noted that Fant had been drinking, though no tests were performed to determine the extent of such drinking. However, when being questioned as to the details of the break-in, petitioner, without any difficulty, and with complete understanding, presented them to the officers. The trial court ruled that the confession had been freely and voluntarily given, thus rendering it admissible in evidence. Court appointed counsel for the petitioner timely objected to its admissibility and on appeal to the Virginia Supreme Court of Appeals his writ of error was denied.

■ The general rule followed in Virginia enables a confession, made by an accused, to be admissible into a court of law providing that such confession was voluntarily made and not elicited by any threat or promise of benefit. Wolf v. Com., 30 Grat. (71 Va.) 833 (1878). The fact that it was made to a police officer or sheriff will not render it inadmissible. Enoch v. Com., 141 Va. 411, 126 S.E. 222 (1925).

■ Virginia adheres to the Wigmore or "orthodox" rule of evidence wherein the judge is charged with the duty to hear all of the evidence and rule upon its voluntariness [1] for the purpose of admitting the confession into evidence. Such was the procedure in this case. After a lengthy hearing by the Circuit Court of the County of Henry, on all aspects dealing with the voluntariness of the confession, the judge admitted such confession into evidence. It has long been established that voluntary confessions are to be received into evidence on the presumption that a person would not make any statement in contradiction to his own interest, especially when such a statement was untrue. Smith v. Com., 10 Grat. (51 Va.) 734 (1853). Once the confession has been placed in evidence, following the Wigmore concept, the jury shall consider its credibility, weight and value. Reid v. Com., 206 Va. 464, 144 S.E. 2d 310 (1965); Noe v. Com., 207 Va. 849, 153 S.E.2d 248 (1967). Also in accord with this view, Morris v. Boles, 386 F.2d 395 (4th Cir. 1967) cert. denied, 390 U.S. 1043, 88 S.Ct. 1640, 20 L.Ed.2d 304 (1968). The judge in the trial court, in his instructions to the jury. (See Instruction E) allowed the jury such a consideration.

■ Petitioner maintains that he was not in control of his faculties because of his "intoxication". This court is in agreement with the general proposition that intoxication at the time of making a confession will not exclude such from being admitted into evidence, however, such intoxication will go to the weight and credibility of the confession, as determined by the jury.

■ Finally, petitioner contends that he did not understandably "waive" his constitutional rights upon being advised of them by the police officers. Petitioner, by being in "custodial interrogation" [2] was entitled to his *Miranda* warnings. Johnson v. Com., 208 Va. 740, 160 S.E.2d 793 (1968). The record indicates clearly that these warnings were given to the petitioner at all times of the interrogation. We realize that it is one thing to give such warnings and another thing to understand them. "After all the required warnings have been given an accused he may knowingly and intelligently waive his rights and agree to answer questions or make a statement. But "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.'" Cardwell v. Com., 209 Va. 68, 161 S.E.2d 787, 789 (1968). Both officers testified during the trial that "he *said* he understood his rights" at the time of interrogation. Following then, the testimony given during the trial, this court is of the opinion that the petitioner voluntarily, knowingly and intelligently waived his constitutional rights during the interrogation period and that the trial court judge was correct in ruling the confession admissible.

For the foregoing reasons the petitioner has failed to convince this court that he is entitled to federal habeas corpus relief based upon his claim of an involuntary confession. It is therefore adjudged and ordered that the writ be denied and the petition dismissed.

1. Virginia follows the Wigmore or "orthodox" rule, and has expressly rejected both the New York rule and the Massachusetts or humane rule. See McCoy v. Com., 206 Va. 470, 144 S.E.2d 303 (1965).

2. In U. S. v. Gibson, 392 F.2d 373, 376 (4th Cir. 1968) the court stated that "'custodial interrogation' certainly includes all station-house or police-car questioning initiated by the police, for there the 'potentiality for compulsion' is obvious."