495 P.2d 1259

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**John HATCHER, Defendant and Appellant.**

**No. 12190.**

Supreme Court of Utah.

April 6, 1972.

D. Gilbert Athay, of Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., David S. Young, Asst. Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Justice:

Defendant appeals from his conviction by a jury of robbery of the Beaver Market, 1224 South Fourth East in Salt Lake City, which was committed about 11:30 p.m. on the night of January 31, 1970. He challenges the conviction on these grounds: (1) that he was arrested without a proper foundation in probable cause; (2) which was based in part upon an unlawful search of his automobile; (3) the use of an incriminating statement from him without his being properly advised of his constitutional rights; and (4) error in admitting testimony about particles of lead which had lodged in his car door.

William Wellington, manager of the Beaver Market, testified that on the night mentioned the defendant came into the store, wearing a nylon stocking loosely over his face, and displaying a small pistol, forced Wellington to turn over the money. As defendant left the store, Wellington followed with a pistol and fired several shots at him, striking the defendant's car on the driver's side. Wellington, who had been an auto mechanic, described the defendant's car as a 1964 white top on maroon body Chevrolet sedan.

From the information given by Wellington, and tips from an informant, police officers learned that the defendant owned a car like the one described. They located the car and the defendant at Zions Motel in Salt Lake City on February 2, 1970. They examined the exterior of the car and removed particles of lead which had lodged in the door of the driver's side. They then went to the defendant's motel room, told him they were police officers, and placed him under arrest. They advised him concerning his constitutional rights and then asked whether he owned the Chevrolet automobile. He answered that he did.

## CLAIM OF UNLAWFUL ARREST

 The authority to arrest without a warrant is set forth in our statute.[1] It permits an officer to do so where "a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." The phrase "reasonable cause" has such a well-known meaning in ordinary usage that it should require no further definition. However, it is appropriate to here note that its practical application in different circumstances may present problems. When it does, the determination is not to be made on a subjective basis, that is, it is not sufficient that the officer believe the foundational facts in good faith. But, on the other hand, it is not required that he have certain knowledge of the guilt of the suspect. The determination should be made on an objective standard: whether from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person in his position would be justified in believing that the suspect had committed the offense.[2] It is our opinion that the officer's decision to make the arrest based upon the evidence related above meets that test.

## CLAIMED UNLAWFUL SEARCH

The pertinent language of Art. I, Sec. 14, of the Constitution of the State of Utah and of the Fourth Amendment of the United States Constitution are identical:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.

 It seems logical to assume that the constitutional language was chosen advisedly and that the protections were assured in the order of priority, that is, most importantly the person, then the house, and then the papers and effects. Attention should also be given to the fact that it is not all searches which are proscribed, but only those which are "unreasonable" under the circumstances.[3] We do not believe that the examination of the exterior of an automobile in plain sight parked at a motel should be deemed to constitute any such intrusion into privacy as to be violative of the constitutional provisions stated above.[4]

1. Sec. 77–13–3(3), U.C.A. 1953.

2. See Stacey v. Emery, 97 U.S. 642, 24 L.Ed. 1035; State v. Lopez, 22 Utah 2d 257, 451 P.2d 772.

3. See Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730;

United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 434, 94 L.Ed. 653; State v. Allred, 16 Utah 2d 41, 395 P.2d 535.

4. See Statement in Davis v. United States, 327 F.2d 301 (9th Cir. 1964). State v. Kent, 20 Utah 2d 1 at page 11, 432 P.2d 64.

## OBTAINING STATEMENT

These facts are not questioned: when the peace officer talked to the defendant at the motel room he advised him of his various constitutional rights in accord with what is known as the "Miranda warning"; this included that he had the right to have an attorney present during any questioning; and that defendant was asked if he understood this, to which he responded "yes." The defect complained of is that the officer did not mention that if he could not afford to hire a lawyer one would be provided for him.

In regard to that contention several observations are made: The first is that the defendant did not actually reveal any incriminating fact not already known to the peace officers. The evidence is clear that they had already ascertained that he owned the car. This occurrence is certainly a long way removed from the type of abuse which might involve elements of duress or oppression which Section 12 of Article VI, Utah Constitution, and Amendment VI to the U. S. Constitution, were intended to guard against in providing that one accused of crime shall not be compelled to give evidence against himself, and that he is entitled to the assistance of counsel. The very fact that an argument is made that the incident described offends against those protections indicates to what extremes they are sometimes extended in the protection of those accused of crime and in disregard of the safety and welfare of the public which it is the purpose of the law to protect.[5] The final observation is that if the evidence under discussion should for any reason be regarded as spurious, then neither the evidence itself, nor the manner in which it was elicited, could fairly be said to have prejudiced the defendant in such a way as to justify reversing his conviction.[6]

## ADMISSION OF OPINION EVIDENCE

We find no merit in defendant's contention that it was error to permit the peace officer, Percy Clark, to testify what he removed from the defendant's automobile was. Lead is a mineral whose nature is of such common knowledge that any person of ordinary intelligence and experience can tell what it is and should be permitted to so testify. This is more particularly true of an experienced police officer in identifying what he judges to be lead of

5. Cardwell v. Commonwealth of Virginia, 209 Va. 68, 161 S.E.2d 787; Commonwealth v. Marsh, 440 Pa. 590, 271 A.2d 481.

6. Sec. 77–42–1, U.C.A. 1953, requires errors not affecting essential rights to be disregarded; and cf. Fed.Rules Crim. Proc., Rule 52(a), 18 U.S.C.A.; see Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, which states that if it appears beyond a reasonable doubt that error would have had no effect upon the outcome of a trial, it should not be regarded as reversible; and see statement in State v. Scandrett, 24 Utah 2d 202, 468 P.2d 639.

the kind used in bullets. The competency of a witness to give such an opinion is a matter concerning which the trial court has considerable latitude of discretion and his ruling will not be disturbed unless he is clearly and patently in error, which we do not find to exist here. If there was any possibility that the substance might have been something other than lead, as the witness stated, the credibility of his testimony was for the jury to determine.

Having found no error which would justify a reversal of the judgment, it is affirmed. No costs awarded.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.