**STATE of Utah, Plaintiff and Appellee,**

v.

**Livio RAMIREZ, Defendant and Appellant.**

**No. 900439–CA.**

Court of Appeals of Utah.

June 25, 1991.

Robert L. Steele (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

Kenneth R. Updegrove (argued), Deputy Salt Lake County Atty., Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Livio Ramirez appeals his conviction for interference with a police officer making a lawful arrest, Utah Code Ann. § 76–8–305 (1990), a class B misdemeanor. We affirm.

## BACKGROUND

At approximately 2 a.m. on May 19, 1990, police officers Rowley and Bigelow, on patrol, received a radio call to back up Officer Smith, who was having trouble with "a drunk" near Trolley Square in Salt Lake City. En route to the scene, the officers received a second call to help Officer Smith, asking them to speed up their response. Based on his nineteen years of police experience, Officer Rowley had found that calls to hasten a backup response usually indicated that the on-scene officer was being assaulted or that other serious problems were developing.

Arriving at the scene, Officers Rowley and Bigelow saw appellant and his brother fleeing on foot, pursued by Officer Smith. Appellant's brother fell down, and was ap-

prehended by Officers Smith and Bigelow. Officer Rowley continued pursuing appellant.

Appellant ran into a nearby house, and Officer Rowley followed. From the front room of the home, Rowley saw appellant in the kitchen doorway, a small, vigorously barking dog at his side. Officer Rowley attempted to apprehend appellant, and a melee ensued among appellant, the officer, and the now-frenzied canine. Another officer arrived and helped subdue appellant and chase the dog out of the house.

When the fur stopped flying, it became evident that appellant had been chased into his own home. It also became evident that, as between appellant and his brother, the latter had been the main reason for the backup calls, because he had thrown a street repair barricade through the window of Officer Smith's car. In fact, appellant's role in the difficulties preceding the arrival of the backup officers appears to have been that of a peacemaker, albeit a noisy one, attempting to stop a fight between his brother and another individual.

Appellant's conviction of interference with a peace officer making a lawful arrest was based entirely on the physical resistance, raised by appellant and his dog, to the in-home arrest. Apparently, no charges against appellant arose from his part in the original disturbance. On appeal, he argues that the warrantless police entry into his home was illegal under the Utah and the United States Constitutions. Therefore, appellant argues that evidence of his resistance cannot be used against him, or, alternatively, that the jury should have been instructed that he was lawfully entitled to resist the illegal police entry into his home.

## FOURTH AMENDMENT

We begin with an examination of the applicable standards under the fourth amendment to the United States Constitution. Under that provision, "[w]arrantless searches and seizures are per se unreasonable unless exigent circumstances require action before a warrant can be obtained." *State v. Christensen*, 676 P.2d 408, 411

(Utah 1984); *see also Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

■ Under Utah's codification of search and seizure principles, a warrantless arrest, or seizure of a person, by a peace officer requires probable or "reasonable" cause. Utah Code Ann. § 77-7-2 (1990). The statute also enumerates exigent circumstances related to flight, concealment, and harm, at least one of which must be present to allow a warrantless arrest:

> A peace officer ... may, without warrant, arrest a person:
>
> . . . .
>
> (3) when he has reasonable cause to believe the person has committed a public offense, and there is reasonable cause for believing the person may:
>
> > (a) flee or conceal himself to avoid arrest;
> >
> > (b) destroy or conceal evidence of the commission of the offense; or
> >
> > (c) injure another person or damage property belonging to another person.

■ With respect to a warrantless search, the burden is on the state to show both probable cause and exigent circumstances. *State v. Larocco*, 794 P.2d 460, 470 (Utah 1990). Here, because entry into a home was involved, that burden is particularly heavy. *See Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379-80, 63 L.Ed.2d 639 (1980) (entry into home is chief evil against which fourth amendment is directed).

Appellant contends that the State demonstrated neither statutory probable cause for his arrest nor the existence of exigent circumstances to justify chasing him into his home to effect the arrest. We disagree.

■ With respect to probable cause, appellant stresses his claimed role as peacemaker, as opposed to troublemaker. He points out that he did not throw the barricade at Officer Smith's car. However, these circumstances have no bearing on whether Officer *Rowley* had probable cause to arrest appellant. Instead, the test

is whether the facts known to Rowley, and the fair inferences therefrom, would justify a reasonable and prudent person in his position in believing that appellant had committed an offense. *State v. Ayala,* 762 P.2d 1107, 1111 (Utah App.1988) (quoting *State v. Hatcher,* 27 Utah 2d 318, 495 P.2d 1259, 1260 (1972)).

■ In his position as a backup officer to help manage "a drunk," Officer Rowley could reasonably believe that Officer Smith was confronted with someone committing a public offense, albeit a minor one. *See* Utah Code Ann. § 76-9-701 (1990) (intoxication is class C misdemeanor). When the backup call was repeated, Officer Rowley could reasonably infer that the situation had become more urgent, probably involving a more serious offense. Upon arriving at the scene and seeing Officer Smith in pursuit of two individuals, it was then reasonable for Officer Rowley to further infer that those individuals were the subject of the backup call, and were being pursued because they were believed to have committed an offense. Therefore, Officer Rowley was justified in believing that appellant had committed a public offense. Coupled with the fact that appellant was fleeing when observed, Rowley was authorized to arrest him under Utah Code Ann. § 77-7-2(3)(a).[1]

Exigent circumstances also justified Officer Rowley's entry into appellant's home to effect the arrest. Specifically, Rowley entered the home in hot pursuit of appellant, only a few seconds behind him.

■ The hot pursuit exception to the warrant requirement rests in part upon the principle that a criminal suspect may not defeat a proper arrest simply by retreating into the home ahead of pursuing police. *See United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300 (1976). This principle is applicable here, and appellant cannot reduce a legitimate arrest attempt to a game of "tag" by reaching "home" a few steps ahead of the police.

■ Appellant, citing *Welsh v. Wisconsin,* 466 U.S. 740, 750–53, 104 S.Ct. 2091, 2097–99, 80 L.Ed.2d 732 (1984), argues that the hot pursuit exception allows warrantless entry into a home only in cases involving felonies.[2] *Welsh,* however, does not sweep so broadly. Instead, that case holds that the gravity of the crime for which an arrest is attempted is "an important factor" to be considered in deciding whether exigent circumstances justify a warrantless in-home arrest. 466 U.S. at 753, 104 S.Ct. at 2099. In *Welsh,* a warrantless in-home arrest was invalid because, in part, it involved only "a noncriminal, traffic offense." *Id.* However, the arrest was also invalid because it did not involve a hot pursuit: "there was no immediate and continuous pursuit of the petitioner from the scene of a crime." *Id.* Here, there was a hot pursuit, because appellant was immediately and continuously pursued from the scene where, at least from Officer Rowley's knowledge, it was reasonable to believe he had committed a crime.

Appellant's *Welsh*-based argument also relies heavily on his assertion that he could not have been suspected of anything more than a minor offense. This assertion, how-

---

**1.** We do not hold that flight from police officers, by itself, can justify the arrest or detention of an individual. This issue was left unresolved in *California v. Hodari D.,* — U.S. —, 111 S.Ct. 1547, 1549 n. 1, 113 L.Ed.2d 690 (1991), and is not presented in this appeal. *See State v. Talbot,* 792 P.2d 489, 493–94 (Utah App.1990) (avoidance of police, by itself, does not justify detention). However, appellant's flight, coupled with the other facts of the case, is among the several facts to be considered in determining whether Officer Rowley had probable cause to arrest him.

We also note that under the unusual facts of this case, it may be that Officer Smith knew that appellant had committed no offense in his pres-

ence, and therefore had no cause to arrest him. However, Officer Rowley, arriving in the middle of a rapidly changing situation, had no opportunity to learn that appellant may have committed no offense, and had to "read" the situation as he saw it.

**2.** The Utah Supreme Court has upheld a warrantless arrest on private property for class B misdemeanors on the basis of a hot pursuit. *State v. Hamilton,* 710 P.2d 174 (Utah 1985). However, the record before the court did not indicate that the property constituted the defendant's residence, *id.* at 175, so the specific question of a warrantless, hot pursuit in-home arrest was not addressed.

ever, improperly imputes Officer Smith's possible knowledge that appellant had not committed a major offense to Officer Rowley, who had neither the time nor the clairvoyance to learn everything that Smith knew about the situation. As already noted, the circumstances of the repeated backup call and his arrival while a chase was in progress provided reasonable justification for Officer Rowley to infer that appellant had committed a serious crime, and had to be apprehended quickly.[3]

Additionally, Officer Rowley could not be certain that the house into which the chase led was appellant's residence. Compare *Welsh,* 466 U.S. at 742, 104 S.Ct. at 2094 (officers identified defendant and located residence by checking license plate of his abandoned car). For all Officer Rowley knew, appellant could have been committing a trespass, and bent on other mischief, when he entered the house.

The evidence presented by the State showed a situation that was developing too rapidly for Officer Rowley to fully assess it, including a hot pursuit already in progress when he arrived on the scene. The situation demanded quick action, and did not allow time to procure a warrant. Therefore, we hold that the State carried its burden of showing that both probable cause to arrest and exigent circumstances existed, justifying the warrantless in-home arrest of appellant under the fourth amendment.[4]

## ARTICLE I, SECTION 14

Citing *State v. Larocco,* 794 P.2d 460 (Utah 1990), appellant argues that article I, section 14 of the Utah Constitution affords greater protection against warrantless searches and seizures than does the likeworded fourth amendment, and should be invoked to hold that the entry into his home was illegal, even if legal under the fourth amendment.

In *Larocco,* a court plurality, questioning the federal theory of a "diminished expectation of privacy" in one's automobile, held that warrantless, probable cause automobile searches are permitted under article I, section 14 only upon a showing of exigent circumstances requiring action before a warrant could be obtained. The only exigent circumstances deemed acceptable to justify such searches, the plurality held, would be the traditional concerns of safety or of preventing the destruction of evidence. 794 P.2d at 469–70.

The key distinguishing feature of *Larocco* from the present situation is that in *Larocco,* police officers were dealing with a relatively static situation. The searched automobile, believed stolen, had been parked in the same location for roughly a week after police discovered it, and there was no sign that the suspected thief had been alerted to police interest in the automobile. *Id.* at 470–71. Thus neither a safety concern nor a risk of evidence loss existed to justify the warrantless search.

Here, however, Officer Rowley encountered a rapidly developing, dynamic situation, complete with fleeing suspects, in response to a colleague's urgent call for backup. While he could not be certain that immediate threats to safety existed, neither could he assume that such threats were absent. There was no way to immediately know, for example, whether appellant was intruding into someone else's home where he might threaten the occupants, or whether he was entering his own home to obtain a weapon. Similarly, it could not be known whether important evidence might be lost

---

**3.** Although Officer Rowley testified only that he suspected an assault on an officer, which is by itself a class A misdemeanor, Utah Code Ann. § 76–5–102.4 (1990), it would not have been unreasonable to suspect aggravated assault, Utah Code Ann. § 76–5–103, a third degree felony, or some other felony.

Because we decide that the warrantless home entry was justified on the basis of probable cause that appellant had committed an offense, we do not address the question of whether such home entry might be valid where an officer, acting under no more than reasonable suspicion, seeks to detain and question an individual. *See* Utah Code Ann. § 77–7–15 (1990) (authorizing police to stop individuals in "public places" based on reasonable suspicion).

**4.** *See State v. Gardiner,* 814 P.2d 568 (Utah 1991) (discussion of right to resist illegal search and arrest).

through delay in following appellant into the home. We believe that, viewed reasonably, this unstable, rapidly developing situation carried inherent potential risks to safety and preservation of evidence, and therefore presented exigent circumstances that justified the warrantless entry into appellant's home. That entry, therefore, was proper under article I, section 14 of the Utah Constitution.

## CONCLUSION

Because we have determined that the pursuit of appellant into his home was not illegal under the Utah and federal constitutions, we need not consider the remedies he proposes for the entry into his home. We stress, however, that under the particular facts of this case, the warrantless entry into a private dwelling is justified. *See Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984) (exigent circumstances exception to warrant requirement for home entry should rarely be sanctioned where suspected offense is minor). Critical facts of this case were the limited knowledge of the situation by the officer who pursued and arrested appellant, and the need of that officer to make rapid choices in response to an unstable situation. Appellant's conviction is affirmed.

GARFF and JACKSON, JJ., concur.